IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CHEN,<br><br>   Plaintiff,<br><br>  v.<br><br>PIONEER OIL, LLC, et al.,<br><br>   Defendants. | Case No. 20-cv-03330-CRB<br><br>**ORDER TRANSFERRING VENUE** |

  In this breach of contract case, Plaintiff Jason Chen brings suit against Defendant Pioneer Oil, along with some of its corporate officers and business partners. Chen alleges Pioneer Oil is operating a shell joint venture to disguise company profits and underpay him pursuant to a previous settlement agreement. Chen brought this suit in the Northern District of California but consents to transfer to the Eastern District of California where he would have filed but for the COVID-19 pandemic. Defendants move to transfer this suit to the District of Montana, or alternatively to the Eastern District of California.

  For the reasons set forth below, the Court GRANTS the Motion to Transfer Venue to the Eastern District of California, as it was Chen's choice of forum and is not inconvenient.

**I. BACKGROUND**

  In 2004, Plaintiff Jason Chen, a resident of California at the time, began working for Defendant Pioneer Oil, a Montana-based company. Am. Compl. (dkt. 10) ¶¶ 1–2, 24. By 2011, Chen left the company for reasons unrelated to the present suit. Id. ¶ 24. Chen then sold his membership interest in Pioneer Oil back to the company, pursuant to a Settlement Agreement and Mutual Release ("Settlement Agreement"). Id. ¶ 25. This contract specified, among other stipulations, that the company would pay Chen 25% of Pioneer Oil's adjusted earnings before

interest, taxes, depreciation, and amortization ("EBITDA") between 2012 and 2016.  Am. Compl., Ex. B (dkt. 14) at 3.  Importantly, the contract also states that Pioneer Oil and its members shall not "divert or attempt to divert any business of or any customers of Pioneer to any other business entity."  Id. at 6.  Chen alleges the purpose of this clause was to "prevent Pioneer and its members from diluting the payments due to Chen by diverting corporate opportunities and profits."  Am. Compl. ¶ 27.  From 2012 through 2016, Pioneer made payments to Chen pursuant to this agreement.  Id. ¶ 26.

However, in May 2019, Chen became concerned that Pioneer Oil had been using a joint venture to hide income, thereby reducing the company's stated profits and underpaying Chen under the Settlement Agreement.  Id. at 35.  Chen became suspicious when Pioneer Oil cancelled over $2 million in debt it owed to a joint venture without any paperwork.  Id.  Pioneer Oil and Matrix Supply & Distribution Limited (MSD), a Hong Kong-based company headed by Kevin Santos-Busch, formed the joint venture in 2011 to manufacture, distribute and sell proppant.  Id. ¶ 32.  This was shortly after Chen left the company.  Id.  Tradegroup Asia Limited (TGA), another Hong Kong-based company, was also involved in the joint venture despite not being on the official documents.  Id.

Chen appointed financial expert Nishith Kumar to investigate the joint venture.  Id. ¶¶ 37–38.  In December 2019, Kumar performed a documentary review at Pioneer Oil's Montana office to learn more about the joint venture.  Id. ¶ 38.  While the records contained more details of the joint venture, some documents were missing.  See generally id. ¶¶ 39–51.  No documents reflected any transactions between Pioneer Oil and MSD between 2011 and 2016, but the same time period showed extensive transactions between Pioneer Oil and TGA.  Id. ¶ 40.  There were no price invoices between joint venture partners.  Id. ¶ 44.  There was also no record of the debt write-off that triggered Chen's suspicions.  Id. ¶ 51.  Pioneer Oil's Chief Financial Officer, Dennis Kluksdahl, told Kumar he had no further information on any of these matters.  See id. ¶¶ 44, 51.

With this information Chen, now a resident of Nevada, filed suit in the Superior Court of California in San Francisco County.  Id. ¶ 1; see generally Notice of Removal, Ex. A (dkt. 1).  Chen had intended to file in the Superior Court in El Dorado County but discovered there would

be delays due to the COVID-19 pandemic.  See Opp'n (dkt. 26) at 13.  This suit originally named Defendants Pioneer Oil, Tad Butt (President and Chief Executive Officer of Pioneer Oil), Bryan Stromberg (former member of Pioneer Oil), and Denhan Enterprises (corporate member of Pioneer Oil).  Notice of Removal, Ex. A ¶¶ 2–5.  MSD, TGA, and Santos-Busch were later added as named defendants.  Am. Compl. ¶¶ 7–9.  Defendants filed a timely notice of removal.  See Notice of Removal.  Defendants now move to transfer venue for convenience to the District of Montana, or alternatively to the Eastern District of California.  See generally Mot. (dkt. 19) at 1.

## II.     LEGAL STANDARD

A district court may transfer the venue of an action "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  Courts have discretion to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness."  See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (internal quotations and citations omitted).  A motion to transfer should not merely shift the inconvenience from the moving party to the opposing party.  See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

To prevail on a motion to transfer, a moving party must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice.  See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp., 820 F. Supp. 503, 506 (C.D. Cal. 1992).

When considering a motion to transfer venue, a court may consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."  Jones, 211 F.3d at 498–99.

## III. DISCUSSION

The parties do not dispute that venue would be proper in the Northern District of California, the Eastern District of California, or the District of Montana. See generally Mot.; Opp'n. The question here is whether Defendants have met their burden of demonstrating that transfer to the District of Montana, or alternatively to the Eastern District of California, would "serve the convenience of the parties and witnesses and . . . promote the interests of justice." See Goodyear, 820 F.Supp. at 506. Weighing these factors, transfer to the Eastern District of California best serves the convenience of the parties and the interests of justice.

### A. Contacts Between Parties, Cause of Action, and Chosen Forum

Three Jones factors center on the contacts between the parties, the cause of action, and the chosen forum: "(1) the location where the relevant agreements were negotiated and executed . . . (4) the respective parties' contacts with the forum, [and] (5) the contacts relating to the plaintiff's cause of action in the chosen forum . . . ." 211 F.3d at 498–99; see also Barnes & Noble, Inc. v. LSI Corp., 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011) ("[C]ourts in this District have commonly articulated the relevant factors as follows . . . convenience of the parties . . . any local interest in the controversy . . . .").

The Northern District of California has minimal contacts with the parties or Chen's claims. The Settlement Agreement was neither negotiated nor executed in the Northern District of California. See Mot. at 10; Chen Decl. (dkt. 26-4) ¶¶ 21–22. No parties reside or previously resided at relevant times in the Northern District of California. See generally Am. Compl. ¶¶ 1–9. While Pioneer Oil has business contacts in the Northern District of California, see Am. Compl. ¶ 17, Chen does not allege that any of the challenged conduct occurred here. See Mot. at 9; see generally Am. Compl.

In contrast, the Eastern District of California has significant contacts with the dispute. For Chen, the Settlement Agreement was negotiated and executed in the Eastern District of California. Chen Decl. ¶¶ 21–22. At the time of the challenged conduct, Chen resided in the Eastern District of California. Am. Compl. ¶ 1. Payments pursuant to the agreement were sent to Chen in the Eastern District. Chen Decl. ¶ 22. Although his permanent residence is now in Nevada, Am.

4

Compl. ¶ 1, he still retains a home in El Dorado County, Opp'n at 7.

The District of Montana also has significant contacts. For the Defendants, the Settlement Agreement was negotiated and executed in Montana. Mot. at 10. Defendants Pioneer Oil and DenHan are headquartered in Montana, and Butt is a resident of Montana. Id. at 1. The other named defendants are residents of other states or countries. Id. Payments pursuant to the Settlement Agreement were sent from Pioneer Oil's Montana headquarters, and much of the challenged conduct involved in setting up and operating the alleged shell joint venture would have taken place in those offices. Id. at 10.

In sum, these factors are neutral between the Eastern District of California and the District of Montana. The Northern District of California is disfavored as it has essentially no contacts with the dispute at issue here.

### B.  Plaintiff's Choice of Forum

The plaintiff's choice of forum is another factor to consider when transferring venue for convenience. See Jones, 211 F.3d at 498–99. See also Barnes & Noble, 823 F. Supp. 2d at 993 ("[C]ourts in this District have commonly articulated the relevant factors as follows . . . plaintiff's choice of forum . . . ."). Generally, the court gives "great weight" to a plaintiff's choice of forum, especially when there are strong contacts between the chosen forum and the dispute. See Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 472 F. Supp. 2d 1183, 1191 (S.D. Cal. 2007) (citing Decker Coal, 805 F.2d at 843).

However, "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration." Lou, 834 F.2d at 739 (citing Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968)). Furthermore, "[i]f there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference." Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

Defendants argue that because the Northern District of California has such minimal ties to

the action and is not Chen's resident forum the Court should not afford Chen's choice of forum any deference. See Mot. at 8.

Chen argues that the unusual circumstances of the COVID-19 pandemic forced him to file in the Northern District of California rather than the Eastern District of California. See Opp'n at 13. Chen initially wanted to file his suit in the El Dorado County Superior Court. Chen Decl. ¶ 26. On March 24, 2020, his counsel looked to file the complaint, but the court website said it would not reopen until April 17, 2020. Trujillo Decl. (dkt. 26-3) ¶ 2. When counsel attempted to contact the courthouse, there was no answer. Id. ¶ 3. However, when checking the status of other Northern California courthouses, Chen's counsel discovered that the San Francisco Superior Court was providing a drop box service for new complaints and would "file-endorse" those documents with the date they were submitted.[1] Id. ¶ 4. Because the San Francisco Superior Court was open in at least some capacity, Chen's counsel moved forward with filing the suit there. Id. ¶ 4. If Chen had been able to file in the El Dorado County Superior Court, the case would have proceeded in the Eastern District of California upon Defendants' removal, rather than the Northern District. See Opp'n at 13. But for the pandemic, Chen would have filed in the Eastern District of California, the location of his former residence with numerous contacts to the dispute. In fact, Chen consents to the transfer of this action to the Eastern District of California. Id.

Due to Chen's original choice of forum, the unprecedented circumstances which led him to file in San Francisco instead, and his willingness to transfer to the Eastern District, filing in the Northern District of California should not be considered forum shopping. Rather, the Court considers the Eastern District of California Chen's actual choice of forum and affords it deference accordingly. As established above, the Eastern District of California has numerous contacts with the case and so Chen's preference for filing there should be given "great weight." See Lou, 834 F.2d at 739. Therefore, this factor strongly favors the Eastern District of California.

---

[1] A complaint must be file-endorsed to begin a civil lawsuit in California state court. "The complaint must be filed with the clerk of the court . . . [w]hen the complaint is presented for filing, the clerk will endorse on the complaint the day, month, and year it was filed." See Traditional filing, Cal. Civ. Prac. Procedure § 7:23.

### C. Availability of Witnesses and Evidence

Courts also consider access to witnesses and evidence when weighing the convenience of a forum. See Jones, 211 F.3d at 498–99 (analyzing "(7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof" in motion for venue transfer); see also Barnes & Noble, 823 F. Supp. 2d at 993 ("[C]ourts in this District have commonly articulated the relevant factors as follows . . . convenience of the witnesses . . . ease of access to the evidence . . . ."). These factors are key in venue transfer analysis, since some courts consider "[t]he paramount consideration in determining whether to transfer venue [to be] convenience to material witnesses." Wilson Daniels, Ltd. v. Decanter Imports, Inc., No. C–93–1635 SAW, 1993 WL 361694, at *2 (N.D. Cal. Sept. 2, 1993) (citing Los Angeles v. National Football League, 89 F.R.D. 497, 501 (C.D. Cal. 1981)).

#### 1. Witnesses and Evidence in California Districts

Examining these factors, the Northern District of California offers no special access to witnesses or evidence. Neither party represents that any material witnesses or evidence is located in this district. See generally Mot.; Opp'n. This strongly disfavors the Northern District of California as a venue.

Similarly, neither party points to significant witnesses or evidence located in the Eastern District of California beyond Chen himself. See generally Mot.; Opp'n.

#### 2. Witnesses and Evidence in the District of Montana

Defendants argue that Montana offers the best access to witnesses and evidence, as the majority of US-based Defendants are located in Montana. For example, Pioneer Oil and DenHan employees are in Montana, and any records of the joint venture would be at the Montana headquarters. See Mot. at 2.

Defendants highlight that witnesses, including "Defendant Butt, Pioneer and all Pioneer corporate officers and employees, DenHan and all DenHan corporate officers and employees, including Dennis Klukstahl, Defendant Stromberg, and Ted McNea, a Billings, Montana based Certified Public Accountant who Plaintiff alleges first audited Pioneer's records" are all located in Montana. Reply (dkt. 29) at 5. These witnesses are material due to their involvement both in the

Settlement Agreement and the joint venture; however, almost all of them are also either named defendants or employees of named defendants. See Am. Compl. ¶¶ 2–9. These relationships lessen any concerns about compelling testimony, so the locations of these witnesses should be given less weight in the analysis. See Williams v. Granite Const. Co., No. C08–04202 HRL, 2009 WL 250104, at *3 (N.D. Cal. Feb. 3, 2009) (affording the location of witness-employees "less weight because [defendant] presumably will be able to compel their testimony at trial"); see also AV Media, Pte, Ltd. v. OmniMount Sys., Inc., No. C 06–3805 JSW, 2006 WL 2850054, at *3 (N.D. Cal. Oct. 5, 2006) ("The convenience of [defendant] party witnesses is entitled to little weight because the witnesses are employees of the party seeking transfer, and [defendant] will be able to compel their testimony at trial.").

Defendants also point to the amount of documentary evidence located in Montana, noting that all of Pioneer Oil's and DenHan's corporate documents and records are maintained in Montana. Butt Decl. (dkt. 19-1) ¶¶ 3–4. Accordingly, the key documentary evidence regarding the Settlement Agreement, the formation of any joint ventures, payments to Chen, and suspicious corporate write-off of debt would be in Montana. Id.

However, Chen's investigative consultant Kumar has already conducted significant research at the corporate headquarters of Pioneer Oil in Montana, to little avail. See generally Am. Compl. ¶¶ 39–51. For instance, Kumar found no documentation of business between Pioneer Oil and MSD. Kumar Decl. (dkt. 26-2) ¶ 8. When Kumar asked for documentation about the debt write-off that triggered Chen's suspicions, a Pioneer Oil executive told him there was none. Id. ¶ 10. So, while there may be documentary evidence in Montana, admissions by Defendants' employee that at least some material documents are not located there further diminishes the weight this factor should be given.

### 3. Witnesses and Evidence Outside Proposed Venues

Furthermore, Chen argues the most material witnesses and evidence are actually located outside of Montana. See Opp'n at 8–9. The demonstrated lack of information in Montana about the disputed joint ventures during Kumar's investigation supports this assertion. See id. at 9. With no Montana-based alternative, Kumar concluded that in order to get the information missing

8

from Pioneer Oil's records, he would need to conduct documentary review of TGA and MSD records in China, "depose corporate representatives of TGA and MSD, including Defendant Santos-Buch (Florida), Norbert Csaszar (Texas), Ben Tsui (Hong Kong), Lin Tai Fung (Hong Kong) and Leung Kin Shing (Hong Kong)" along with "representatives and employees of the Chinese companies that supplied proppant to TGA and MSD." Id.; see also Kumar Decl ¶¶ 16–18. Although the existence of out-of-state and international material witnesses and evidence does not favor any of the proposed venues in this motion, it lessens any convenience gained by transfer to Montana.

In conclusion, while there are more material witnesses and evidence in Montana than in the Eastern District of California, because most Montana witnesses are employees of the Defendant and the lack of documentary evidence in Montana has been demonstrated by earlier investigations, this factor only slightly favors Montana over the Eastern District of California.

### D.  Differences in Litigating Between Forums

Courts compare "the differences in the costs of litigation in the two forums" when determining whether to transfer venue for convenience. Jones, 211 F.3d at 498–99. Courts may also consider "the relative court congestion and time of trial in each forum." Barnes & Noble, 823 F. Supp. 2d at 993.

The parties have submitted little evidence on differences in litigation costs or congestion. Concerning costs, Chen submits that flight times and costs are greater traveling to Montana than California. Park Decl. (dkt. 26-1) ¶¶ 4–6. However, Chen also emphasizes the amount of witness travel and discovery that needs to be conducted outside of either state and often internationally, meaning there will be significant costs regardless of venue. See Opp'n at 9. Defendants state that "the Montana District is likely to be much less congested at the time of trial than any court in California," but submit no evidence to support their claim. See Mot. at 10. As the travel efforts would require significant costs in either venue and Defendants only assume that a Montana court will be less crowded, the factors regarding differences in litigation cost and congestion are neutral between venues.

### E. Familiarity with Governing Law

The final factor the Court examines is the proposed venue's familiarity with governing law. See Jones, 211 F.3d at 498–99 (weighing "the state that is most familiar with the governing law" in motion to transfer venue).

The parties do not dispute that the Settlement Agreement is to be interpreted under Montana law due to the contract's choice of law clause, so Montana is the state most familiar with the applicable law in this case. See Opp'n at 19. Chen counters that this dispute is centered on factual queries, such as how the Defendants underpaid Chen, rather than complicated matters of law, and therefore familiarity with governing law should not be a significant factor. See id. While this may be true, it does not change the fact that a Montana court will be more familiar with the applicable law than a California Court.

However, as Chen notes in his brief, choice of law is not a dispositive factor when considering a venue transfer for convenience. See id. Chen points to Jones, where the Ninth Circuit upheld a denial of venue transfer to Pennsylvania in a contract case where the contract had both a Pennsylvania forum selection clause and a Pennsylvania choice of law clause. See generally 211 F.3d at 495. When other factors in the analysis indicate a different forum would be more appropriate, the Court is not bound to transfer a case to the forum most familiar with applicable law. Id.

### IV. CONCLUSION

In sum, the Northern District of California is not the most convenient forum for this dispute. While Montana offers a slight benefit in convenience as far as witnesses, evidence, and familiarity with governing law, these factors do not outweigh the deference that should be afforded to Chen's original choice to litigate his claim in the Eastern District of California, a forum which also has numerous contacts with the case.

//
//
//
//

10

1   For the foregoing reasons, the Court GRANTS the Motion to Transfer to the Eastern
2   District of California.
3   **IT IS SO ORDERED.**
4   Dated: July 16, 2020



CHARLES R. BREYER
United States District Judge